UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

CEDRIC HOLMES,                           :

                               :     **MEMORANDUM DECISION AND**

               Plaintiff,      :     **ORDER**

                               :

        - against -           :     25-cv-1630 (BMC)

                               :

NYC SCHOOL SUPPORT SERVICES INC.,   :
NEW YORK CITY DEPARTMENT OF       :
EDUCATION, GREG DIORIO, and         :
WILLIAM WILSON,                      :

                               :

                  Defendants.    :

---------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff Cedric Holmes worked for New York City School Support Services Inc.

("NYCSSS") for over ten years before he was terminated in August 2024.[1]  He brings claims for

workplace discrimination, retaliation, and hostile work environment under Title VII of the Civil

Rights Act, the Family and Medical Leave Act ("FMLA"), 42 U.S.C. § 1981, 42 U.S.C. § 1983,

the New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights

Law ("NYSHRL").  Defendants have moved to compel arbitration and stay the case, due to the

existence of a collective bargaining agreement between plaintiff's labor union and the bargaining

agent of the corporate defendants.[2]  Alternatively, defendants have moved to dismiss all of

plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure except for any

retaliation claims pursuant to Title VII, the NYCHRL and the NYSHRL.  For the following

---

[1] Neither side explains the relationship between the NYCSSS and the NYCDOE.  The Court will therefore refer to them jointly as the DOE.

[2] Although William Wilson is a named defendant, the Court dismissed him due to plaintiff's failure to comply with Fed. R. Civ. P. 4(m).

reasons, defendants' motion to compel arbitration is denied, and the motion to dismiss is granted in part and denied in part.

## BACKGROUND

### I.    Summary of Complaint

Plaintiff is a black man who worked as a cleaner for defendants before eventually being promoted to fireman, a role in which he supervised cleaners.  In June 2023, Greg Diorio, who is white, became Custodial Engineer at the DOE, making him plaintiff's new supervisor.  Diorio disparately awarded overtime and assignments to two white employees but not plaintiff.  Diorio also selectively punished plaintiff, but not the two other employees, for otherwise equivalent conduct.

In October 2023, plaintiff returned from medical leave, after undergoing elbow and shoulder surgery about three months prior.  Diorio informed plaintiff that he would no longer be receiving an hour on Mondays to do "flushing," and about five hours of overtime a week, due to budget constraints.  Nonetheless, Diorio continued to give overtime benefits to two white employees, both of whom Diorio had hired, even though it was customary in the DOE for overtime to be allocated to firemen before cleaners.

The first time that plaintiff was late to work under Diorio's supervision, Diorio requested his termination without warning.  This violated the principle of progressive discipline that applied to the entire custodial department.  Although plaintiff was not terminated for this incident, he was suspended for two weeks.

Another time, plaintiff was late to work because of construction and heavy traffic.  As required, plaintiff called to explain why he would be late.  Nonetheless, Diorio reprimanded plaintiff and suspended him for another two weeks.  As part of the written reprimand, Diorio

admonished plaintiff for not buffing the floors.  Plaintiff showed Diorio that the floors he had buffed looked "exactly the same" as those buffed by his white coworkers (which Diorio apparently found acceptable), but Diorio did not rescind the disciplinary action against plaintiff.

On several occasions, plaintiff complained about this behavior to the school principal and Diorio's supervisor.  Plaintiff was assured that someone would talk to Diorio.  On December 27, 2023, plaintiff was reprimanded for complaining to the principal and for "going outside the cha[in] of command" to air his complaints.

On May 28, 2024, plaintiff filed a grievance complaint with the DOE's Office of Equal Opportunity ("OEO"), alleging discrimination, harassment, and retaliation against Diorio.

Sometime in July 2024, plaintiff asked Diorio if he could come to work late because of a family emergency.  Diorio agreed.  Nonetheless, at his scheduled start time, Diorio called and asked where plaintiff was.  When plaintiff responded that he was still at home, Diorio told him not to bother coming into work that day.  Plaintiff followed Diorio's instructions and stayed home.  Later that day, Diorio requested plaintiff's termination for failing to show up for work. Defendants terminated his employment around August 6, 2024.

Plaintiff's complaint is a mess.  It contains thirteen claims that overlap to a substantial extent and makes addressing them individually nearly impossible: (1) **Title VII**: termination in retaliation for complaining about discrimination; (2) **§§ 1981, 1983**: termination in retaliation for complaining about discrimination; (3) **FMLA**: denial of overtime in retaliation for taking FMLA leave; (4) **Title VII**: termination and being "treated differently" based on race; (5) **§§ 1981, 1983**: termination based on race (against Diorio); (6) **Title VII, § 1981**: denial of overtime in retaliation for complaining about discrimination; (7) **Title VII, § 1981**: improper suspension on two occasions on "trumped up charges and/or being treated worse than non-black employees" in

retaliation for complaining about discrimination; (8) **NYSHRL, NYCHRL**: retaliatory termination for complaining about discrimination; (9) **NYSHRL, NYCHRL**: denial of overtime in retaliation for complaining about discrimination; (10) **NYSHRL, NYCHRL**: termination and being "treated differently" based on race; (11) **NYSHRL, NYCHRL**: improper suspension on two occasions on "trumped up charges and/or being treated worse than non-black employees" in retaliation for complaining about discrimination; (12) materially the same as Claim 10; (13) **NYSHRL, NYCHRL**: hostile work environment by "being written up six times," getting changing shifts "constantly and without notice" and being "treated worse" than non-black employees.

## II.    Arbitration Proceedings

Plaintiff's labor union, Local 94, and defendants' bargaining agent, the Realty Advisory Board ("RAB"), entered into a collective bargaining agreement ("CBA") covering a period from January 1, 2023, through December 31, 2026.

Article V provides for the grievance procedure:

> Any grievance or dispute arising out of the interpretation, performance or applicability of any term or provision of this agreement shall be submitted to a Grievance Committee, in writing by the party complaining within thirty (30) days of occurrence unless the Committee or the Arbitrator finds that the complainant did not and could not reasonably have known of the existence of said occurrence within thirty (30) days.

Article VI provides for the arbitration procedure:

> In the event of failure of the Grievance Committee to determine an issue arising between the parties as to the interpretation, performance or applicability of any term or provision of this agreement, such issue shall be submitted to an Arbitrator.

Article XII prohibits:

> discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII

4

> of the Civil Rights Act, . . . 42 U.S.C. § 1981, the Family and Medical Leave Act, the New York State Human Rights Law, . . . the New York City Human Rights Code, . . . or any other similar laws, rules or regulations.

It expressly designates the CBA's grievance and arbitration procedure as the sole and exclusive remedy for claims of illegal discrimination:

> All claims alleging illegal discrimination under any of the above authorities, as well as all claims alleging violations of . . . any other federal, state or local wage payment statutes or regulations, shall be subject to the [CBA's] grievance and arbitration procedure as the final, binding, sole and exclusive remedy for such violations, and employees covered by this [CBA] shall not file suit or seek relief in any other forum.

As mentioned above, on May 28, 2024, plaintiff filed an OEO complaint against Diorio. The parties scheduled a meeting as part of the investigation of the complaint for July 30, 2024. Because his union representative was not available on that date, plaintiff requested that the parties reschedule the meeting. A principal of the school told him that the school directors were working together to conclude the investigation by August 1, 2024. However, defendants never rescheduled the meeting.

After defendants terminated plaintiff's employment on August 6, 2024, plaintiff, through his union representative, requested grievance and arbitration proceedings. The RAB scheduled a grievance hearing on September 12, 2024. At that hearing, defendants offered him his job back, but plaintiff refused to accept it, alleging that the attached conditions were unreasonable.

In September 2024, plaintiff, through his union representative, sent the DOE a request to arbitrate. Counsel for the DOE refused, explaining that because of plaintiff's outstanding OEO complaint, he could not consider plaintiff's arbitration request until defendants resolved that first. Counsel then asserted that the OEO complaint would take a long time to process, and that he

looked "forward to his arbitration when it gets scheduled months or years from now."[3] Plaintiff's union representative also sent RAB's counsel an email requesting an arbitration hearing.  RAB's counsel also responded that due to the ongoing OEO investigation, an arbitration hearing could not be scheduled until the conclusion of that investigation.

On November 12, 2024, plaintiff sent an email to all relevant parties asserting that defendants were supposed to have investigated and completed his OEO complaint by August 1, 2024, and requesting a status update on his claim.  Plaintiff received no reply to that email. Plaintiff then brought the instant action in March 2025.

## DISCUSSION

### I.        Motion to Compel Arbitration

"[B]ecause a motion to compel arbitration goes to the Court's power to hear a case . . . a district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss."  Harris v. TD Ameritrade Inc., 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018) (citations omitted).  "Even if the arbitration issue is not considered jurisdictional, it should ordinarily be addressed first as a matter of judicial efficiency."  Id. at 182 (citation omitted).

"In deciding motions to compel, courts apply a 'standard similar to that applicable for a motion for summary judgment.'"  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016) (quoting Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)).  "The summary judgment standard requires a court to 'consider all relevant, admissible evidence submitted by

---

[3] A jury may well think that that is a sarcastic, bureaucratic response, especially since defendants cannot point to any provision in the relevant documents requiring an employee to wait interminably for the conclusion of an OEO investigation.

6

the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits.'" Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002)). "In doing so, the court must draw all reasonable inferences in favor of the non-moving party." Id. (citing Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 171-72 (2d Cir. 2011)).

"The Federal Arbitration Act (the "FAA") provides that '[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable.'" Nicosia, 834 F.3d at 228 (quoting 9 U.S.C. § 2).

Here, the parties do not dispute that a valid arbitration agreement exists, or that both are bound by its terms. Indeed, the CBA's provision designating arbitration as the sole and exclusive remedy for claims of illegal discrimination is almost identical to those of other arbitration agreements that courts have found valid and enforceable. See, e.g., Lobban v. Cromwell Towers Apartments, Ltd. P'ship, 345 F. Supp. 3d 334, 348 (S.D.N.Y. 2018). It is likewise undisputed that plaintiff's Title VII, FMLA, NYCHRL, NYSHRL, and § 1981 claims are all expressly governed by Article XII of the CBA.

Plaintiff argues, however, that defendants have waived their right to compel arbitration because defendants refused to arbitrate even after plaintiff requested it multiple times prior to commencing this action.

Until recently, courts routinely decided issues of waiver in favor of arbitration, citing the "overriding federal policy favoring arbitration." See Doyle v. UBS Fin. Servs., Inc., 144 F.4th 122, 126-27 (2d Cir. 2025) ("'In view of the overriding federal policy favoring arbitration,' we held, 'waiver is not to be lightly inferred . . . .'"); see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) (explaining, in dicta, that courts should presume that arbitrators

7

decide questions of waiver).  However, in <u>Morgan v. Sundance, Inc.</u>, 596 U.S. 411, 418 (2022), the Supreme Court clarified that:

> a court must hold a party to its arbitration contract just as the court would to any other kind.  But a court may not devise novel rules to favor arbitration over litigation.  If an ordinary procedural rule – whether of waiver or forfeiture or what-have-you – would counsel against enforcement of an arbitration contract, then so be it.  The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.

(internal citations omitted).  In response, the Second Circuit established a new test for evaluating a waiver.  Courts now focus on the question: "Did the moving party knowingly relinquish the right to arbitrate by acting inconsistently with that right?"  <u>Doyle</u>, 144 F.4th at 130.

One way a party can act inconsistently with the right to arbitrate is by refusing to arbitrate altogether.  In <u>Lane Ltd. v. Larus & Brother Co.</u>, 243 F.2d 364, 367 (2d Cir. 1957), the Second Circuit held that a "party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced."  There, the "unjustifiable objection" was the outright refusal to arbitrate the plaintiff's request for damages because the defendant did not believe that such damages fell within the scope of the parties' arbitration agreement.  The relevant question in this case, therefore, is whether defendants raised unjustifiable objections prior to plaintiff bringing this suit, such that their actions can be considered an outright refusal to arbitrate.

Defendants argue that a rule exists purportedly preventing them from initiating arbitration proceedings until they have resolved plaintiff's OEO investigation.  However, although all relevant parties to the CBA, including plaintiff, plaintiff's union, and counsels for the DOE and RAB, seem to acknowledge the rule's existence, nobody seems to know where it comes from, or why it is necessary.  The CBA itself does not mention the rule, and when pressed by the Court at

the initial status conference for this case in June 2025, defendants could not explain why resolution of plaintiff's OEO complaint was a precondition for the arbitration to proceed.

Even assuming that such a rule exists, defendants have provided no evidence at all that would suggest that they actually investigated plaintiff's OEO complaint. Defendants' motion papers do not mention that defendants took any steps to investigate the complaint, and when plaintiff raised this concern in his opposition to the motion, defendants expressly declined to file a reply. Defendants never rescheduled the initial meeting that was supposed to take place in July 2024, and when plaintiff sent a follow up email in November 2024 asking about the status of the investigation, he never received a response.

On March 31, 2026, the Court held a hearing to determine the status of plaintiff's OEO investigation. The Court asked defendants what steps they had taken to investigate the complaint. Again, defendants were unable to provide an answer. The Court gave defendants an opportunity to file supplemental briefing on the status of the OEO investigation. For the first time, almost two years after plaintiff first submitted his OEO complaint, defendants represented to the Court, and to plaintiff, that the investigation "had been closed," and that they would now work with plaintiff's union to commence arbitration. Defendants did not tell the Court on what date the investigation had been closed, or more importantly, what the OEO had actually investigated over a two-year period. In fact, defendants provided no evidence indicating that they had investigated plaintiff's complaint at all, and plaintiff asserts that defendants never contacted him about the OEO investigation or any of the witnesses to the investigation.

Plaintiff maintains that the OEO investigation never took place, and the Court agrees. Defendants held the trigger to commence arbitration after plaintiff demanded it and yet defendants never followed up. Clearly, a refusal to arbitrate premised on the resolution of an

9

investigation that, in two years, defendants never even started, is an unjustifiable objection. See Lane, 243 F.2d at 367. Accordingly, defendants have waived their right to arbitrate, and the Court denies defendants' motion to compel arbitration and stay this suit.

## II.   Motion To Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "It is not enough for a plaintiff to allege facts consistent with liability; the complaint must 'nudge[ ]' claims 'across the line from conceivable to plausible.'" Saskatchewan Healthcare Employee's Pension Plan v. KE Holdings Inc., 718 F. Supp. 3d 344, 374 (S.D.N.Y. 2024) (quoting Twombly, 550 U.S. at 570). When deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).

### A.   Discrimination

#### 1.   Title VII

Plaintiff brings Title VII race discrimination claims against all defendants. But "Title VII 'does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers.'" Littlejohn v. City of New York, 795 F.3d 297, 313 (2d Cir. 2015) (quoting Raspardo v. Carlone, 770 F.3d 97, 113 (2d Cir. 2014)). Plaintiff does not allege that he was employed by Diorio, and so the Court dismisses plaintiff's Title VII claim against him.

10

As to the claim against the DOE, "Title VII makes it unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)).  To defeat a motion to dismiss, "a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation,'" id. at 84 (quoting Littlejohn, 795 F.3d at 306, 311), "or by otherwise creating a 'mosaic' of intentional discrimination by identifying 'bits and pieces of evidence' that together give rise to an inference of discrimination," id. at 87 (quoting Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir. 1998)).  A plaintiff can give plausible support to a minimal inference of discriminatory motivation by pointing to "the more favorable treatment of employees not in the protected group." Littlejohn, 795 F.3d at 312 (citation omitted).

Although not required, see Vega, 801 F.3d at 84 ("[A] plaintiff is not required to plead a prima facie case under McDonnell Douglas . . . to defeat a motion to dismiss"), a plaintiff can make this minimal showing by pleading the same factors of a prima facie case under the "reduced requirements that arise under McDonnell Douglas in the initial phase of a Title VII litigation." Littlejohn, 795 F.3d at 311 (explaining that the four prima facie factors are whether (1) the plaintiff is a member of a protected class, (2) the plaintiff was qualified for his job, (3) the plaintiff suffered an adverse employment action, and (4) there is at least minimal support for the proposition that his employer was motivated by discriminatory intent).

Defendants do not dispute that plaintiff satisfies the first three factors.  Under the fourth factor, however, defendants argue that to maintain a claim for discrimination, plaintiff and his

11

two white comparators must have been similarly situated in all material respects, and that here, plaintiff has not made such a showing.

Defendants are correct that on a motion to dismiss, "adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination." Id. at 312 (citing Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)). However, "while the plaintiff's and comparator's circumstances must bear a reasonably close resemblance, they need not be identical." Carris v. First Student, Inc., 682 F. App'x 30, 32 (2d Cir. 2017) (cleaned up) (quoting Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014)).

Plaintiff has plausibly alleged that he and his two white coworkers worked in roles that bear a reasonably close resemblance. It is true, as defendants point out, that plaintiff and the coworkers were not "employed in the same title," because plaintiff was a "fireman" and the coworkers were "cleaners." But at this early stage of the case, we do not know if that made any practical difference. Both roles executed the duties of a cleaner. Both firemen and cleaners buffed floors, conducted "flushing," worked similar overtime hours, and reported directly to Diorio. Diorio assigned tasks, made schedules, and issued disciplinary actions to both firemen and cleaners. Accordingly, plaintiff has met his burden, and to "the extent issues remain as to whether the [cleaners] are sufficiently similar, '[that is] a question of fact, rather than a legal question to be resolved on a motion to dismiss.'" See Gahfi v. New York City Dep't of Educ., No. 23-cv-1782, 2025 WL 675933, at *5 (quoting Buon v. Spindler, 65 F.4th 64, 70, 85 n.7 (2d Cir. 2023)).

Plaintiff has also alleged facts showing a more favorable treatment of employees not in plaintiff's protected class. Although Diorio cut plaintiff's overtime, he did not do the same to the white coworkers who were less senior than plaintiff, contrary to the customary practice at the

12

DOE.  Additionally, Diorio suspended plaintiff twice for lateness, but "did not similarly discipline" the two coworkers, even when they failed to complete "assignments," and admonished plaintiff for not buffing floors which looked "exactly the same" as those buffed by the coworkers.

Taken together, these "bits and pieces" of information, although insufficient alone, paint a pattern, or "mosaic" of intentional discrimination that is just enough to nudge plaintiff's claim across the line from conceivable to plausible.  See Vega, 801 F.3d at 86-87.  Accordingly, the Court sustains plaintiff's Title VII race discrimination claim against the DOE.

### 2.    § 1981 and § 1983

Plaintiff brings § 1981 and § 1983 race discrimination claims against only Diorio. Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment."  Patterson v. Cty. of Oneida, 375 F.3d 206, 224 (2d Cir. 2004).  Section 1983, by contrast, "is not itself a source of substantive rights," but rather provides "'a method for vindicating federal rights elsewhere conferred,' such as those conferred by § 1981."  Id. at 225 (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)).  Section 1983 applies only to deprivations of rights by state actors, Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996), and "constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state [actors]," see Duplan v. City of N.Y., 888 F.3d 612, 619, 621 (2d Cir. 2018) (emphasis omitted) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989)).  Therefore, the Court considers plaintiff's § 1981 claim under § 1983.

To state a claim under § 1983, plaintiff must allege two elements: (1) "the violation of a right secured by the Constitution and laws of the United States" (i.e., a violation of § 1981), and

13

(2) "the alleged deprivation was committed by a person acting under color of state law." See

Vega, 801 F.3d at 87-88 (quoting Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004)).

The Court considers the § 1981 discrimination claim under the same standard applicable

to Title VII.  See Littlejohn, 795 F.3d at 312.  As discussed above, plaintiff has sufficiently

alleged a claim for discrimination under Title VII.  Accordingly, the only question is whether the

alleged discrimination was "committed by a person acting under color of state law."

Plaintiff has adequately alleged the second element because all of Diorio's alleged

discriminatory actions – cutting plaintiff's overtime, disparately disciplining him, and

terminating him – were taken in Diorio's official capacity as plaintiff's supervisor.  See Guttilla

v. City of New York, No. 14-cv-156, 2015 WL 437405, at *5 (S.D.N.Y. Feb. 3, 2015)

("[G]enerally, a public employee acts under color of state law while acting in his official

capacity or while exercising his responsibilities pursuant to state law.").  Diorio was employed as

a supervisor by the DOE, a municipal entity that "acts under color of state law."  See Sylla v.

New York City Dep't of Educ., 664 F. Supp. 3d 311, 330 (E.D.N.Y. 2023).  Accordingly, the

Court sustains plaintiff's § 1983 discrimination claim against Diorio.

### 3.     NYSHRL

Plaintiff brings NYSHRL race discrimination claims against all defendants.  Section 296

of the NYSHRL prohibits an "employer" from discriminating against an employee "in

compensation or in terms, conditions or privileges of employment" because of their "race, [or]

color."  N.Y. Exec. Law § 296(1)(a).

Although plaintiff alleges that the DOE is his employer, the NYSHRL does not impose

vicarious liability on an employer for the discriminatory actions of its employee, "unless the

employer became a party to it by encouraging, condoning, or approving it."  Totem Taxi, Inc. v.

14

New York State Hum. Rts. Appeal Bd., 65 N.Y.2d 300, 305, 491 N.Y.S.2d 293, 295 (1985) ("[Section 296(1) does not provide] that a person who employs one who commits a discriminatory act is also guilty of a violation irrespective of fault.").  Plaintiff's discrimination claims derive entirely from Diorio's actions, and there are no allegations that the DOE encouraged, condoned, or approved of those actions.  Accordingly, the Court dismisses plaintiff's NYSHRL discrimination claim against the DOE.

As to the claim against Diorio, the Court must first determine whether Diorio is also liable as an "employer" within the meaning of the NYSHRL, as plaintiff does not allege that Diorio directly employed him.

"[F]ederal courts have long understood the NYSHRL to allow individual liability if the individual qualifies as an 'employer.'"  Bonaffini v. City Univ. of New York, No. 20-cv-5118, 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021) (citing Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 57 (2d Cir. 2012)).  Traditionally, courts have employed a multifactor test, which considers "whether the alleged employer controls: (1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct."  Garcia v. Westhampton Primary Care, No. 23-cv-4319, 2025 WL 2614945, at *9 (E.D.N.Y. Sept. 10, 2025) (internal quotation marks omitted); see, e.g., Moreno v. Cap. Concrete NY Inc., No. 24-cv-3120, 2025 WL 2933100, at *5 (E.D.N.Y. Aug. 13, 2025), report and recommendation adopted, No. 24-cv-3120, 2025 WL 2555609 (E.D.N.Y. Sept. 5, 2025); Bonterre v. City of New York, No. 18-cv-745, 2021 WL 4060358, at *9 (S.D.N.Y. Sept. 7, 2021).

In response to Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 457, 143 N.Y.S.3d 286, 291 (2021), however, some courts, including this one, have held that where a defendant is an

15

"employee" of the plaintiff's corporate employer, "the NYSHRL 'the DOEs not render employees liable as individual employers.'" Bonaffini, 2021 WL 2895688, at *2 (quoting Bloomberg, 36 N.Y.3d at 457); see, e.g., Belyea v. City of Glen Cove, No. 20-cv-5675, 2023 WL 1929787, at *2 (E.D.N.Y. Feb. 10, 2023); Nezaj v. PS450 Bar & Rest., 719 F. Supp. 3d 318, 329 (S.D.N.Y. 2024); Dawson v. Beebe, No. 24-cv-1548, 2025 WL 2402289, at *11 (S.D.N.Y. Aug. 19, 2025).

For the following reasons, this Court adopts the traditional test to determine whether an individual employee of plaintiff's employer is also an "employer."[4]

First, Bloomberg does not establish a new rule prohibiting any individual employee from being considered an "employer" under the NYSHRL. The question presented in Bloomberg was whether defendant Michael Bloomberg, an owner and corporate officer of Bloomberg L.P., could be held vicariously liable as an "employer" under the City HRL (and *not* the State HRL) for the allegedly discriminatory actions committed by a company employee. Bloomberg, 36 N.Y.3d at 453. The Court explained, in dicta, that it had previously held in Patrowich v. Chem. Bank, 63 N.Y.2d 541, 542, 483 N.Y.S.2d 659, 660 (1984), that a "corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division," could not be held liable as an "employer" under the State HRL. Bloomberg, 36 N.Y.3d at 457. But Patrowich itself suggests that an employee with "power to do more than carry out personnel decisions made by others" could, in fact, face liability as an "employer." Patrowich, 63 N.Y.2d at 542.

---

[4] In doing so, the Court reaches a different conclusion to its prior decision in Bonaffini, 2021 WL 2895688, at *2. The Court finds Griffin v. Sirva, Inc., 29 N.Y.3d 174, 186, 54 N.Y.S.3d 360, 366 (2017), which the Court did not consider in Bonaffini, highly persuasive that the New York Court of Appeals did not intend to establish a new rule through dicta in Bloomberg prohibiting any individual employee from being considered an "employer" under the NYSHRL.

As Judge Choudhury points out in Garcia, 2025 WL 2614945, at *10, this dicta in Bloomberg likely does not alter the New York Court of Appeals' holding in Griffin v. Sirva, Inc., 29 N.Y.3d 174, 186, 54 N.Y.S.3d 360, 366 (2017), decided a mere four years earlier.  In Griffin, in response to a certified question from the Second Circuit, the Court of Appeals identified "four factors to use in determining whether an entity is an aggrieved party's employer: '(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct.' . . . 'with greatest emphasis placed on the alleged employer's power to order and control the employee in his or her performance of work.'"  Griffin v. Sirva Inc., 858 F.3d 69, 70 (2d Cir. 2017) (quoting Griffin, 29 N.Y.3d at 186).  Griffin thus held that depending on those factors, an individual employee *can* be an "employer" for purposes of the NYSHRL.  Although in Griffin, the Court of Appeals was concerned with the definition of the word "employer" for purposes of § 296(15) of the NYSHRL, this Court finds no meaningful distinction between the word "employer" as used in § 296(1) and "employer" as used in § 296(15).

Having concluded that the four-factor test enumerated in Garcia applies in determining whether an employee is liable as an "employer" under § 296(1) of the NYSHRL, the Court considers whether Diorio had control over (1) the selection and engagement of plaintiff; (2) the payment of plaintiff's salary or wages; (3) the power to dismiss plaintiff; and (4) plaintiff's conduct, with greatest emphasis placed on Diorio's power to order and control plaintiff in his performance of work.

Diorio did not hire plaintiff.  However, he had some control over the payment of plaintiff's salary and wages, as plaintiff alleges that Diorio took away his overtime pay.  And although it seems Diorio did not have the unilateral power to terminate plaintiff (Diorio

17

"requested" plaintiff's termination multiple times), he had the power to order and control plaintiff's performance of work, as it was Diorio who determined plaintiff's work hours, who granted plaintiff's request to arrive at work later than usual, and who was responsible for disciplining plaintiff.  Accordingly, with greatest emphasis placed on this last factor, Diorio is liable as an "employer" under the NYSHRL.

Following the 2019 amendments to the NYSHRL, the standard for pleading a NYSHRL discrimination claim is now just as lenient as under the NYCHRL, which in turn, is more lenient than under Title VII.  See Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024) (citing N.Y. Exec. Law § 300; Doolittle v. Bloomberg L.P., No. 22-cv-9136, 2023 WL 7151718, at *7 (S.D.N.Y. Oct. 31, 2023)).  Because, as discussed above, plaintiff has sufficiently alleged a claim for discrimination under Title VII, under a more lenient pleading standard, the Court also sustains plaintiff's NYSHRL race discrimination claim against Diorio.

### 4.     NYCHRL

Plaintiff brings NYCHRL race discrimination claims against all defendants.  Section 8-107(1) prohibits "an employer or an employee or agent thereof" from refusing to hire; discriminating against in compensation, terms, conditions or privileges of employment; or firing, an employee based on "race, [or] color."  N.Y. City Admin. Code § 8-107(1)(a).

The NYCHRL does not impose vicarious liability on an employer for an employee's violation of § 8-107(1), unless, *inter alia*, "the employee or agent exercised managerial or supervisory responsibility."  See N.Y. City Admin. Code § 8-107(13).  Thus, "[t]he NYCHRL imposes strict liability on employers for discriminatory acts of managerial employees."  Gorman

18

v. Covidien, LLC, 146 F. Supp. 3d 509, 529 (S.D.N.Y. 2015) (quoting Garrigan v. Ruby Tuesday, Inc., No. 14-cv-155, 2014 WL 2134613, at *6 (S.D.N.Y. May 22, 2014)).

Plaintiff alleges that Diorio had control over the payment of plaintiff's salary and wages and the power to order and control plaintiff's performance of work.  Accordingly, Diorio exercised "managerial or supervisory responsibility," and the DOE is strictly liable under the NYCHRL for Diorio's actions.  Unlike with the NYSHRL, there is no question that the NYCHRL applies to Diorio, as § 8-107(1) explicitly prohibits discrimination by an "employee" of an employer.

"To survive a motion to dismiss a claim for discrimination under the NYCHRL, a plaintiff must only plead that she was 'treated less well at least in part because of her [membership in a protected class].'"  Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229, 245 (S.D.N.Y. 2024) (alteration in original) (quoting Ruiz v. City of New York, 2015 WL 5146629, at *5 (S.D.N.Y. Sept. 2, 2015)); see Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 329 (S.D.N.Y. 2020) ("NYCHRL claims are to be reviewed more liberally than Title VII claims, and the provisions of the NYCHRL must be construed broadly in favor of plaintiffs alleging discrimination.").

As discussed above, plaintiff has sufficiently alleged a claim for discrimination under Title VII.  Accordingly, under a more lenient pleading standard, the Court also sustains plaintiff's NYCHRL race discrimination claim against all defendants.

## B.    Hostile Work Environment

### 1.    NYSHRL

Prior to the 2019 amendments to the NYSHRL, hostile work environment claims under both Title VII and the NYSHRL were governed by the same standard.  See, e.g., Summa v.

19

Hofstra Univ., 708 F.3d 115, 123-24 (2d Cir. 2013).  Following the 2019 amendments, however, the NYSHRL prohibits "an employer" from subjecting "any individual to harassment because of an individual's . . . race, [or] color . . . regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims."  N.Y. Exec. Law § 296(1)(h); see Farmer v. Shake Shack Enters., LLC, 473 F. Supp. 3d 309, 334 n.9 (S.D.N.Y. 2020) ("In August 2019, the NYSHRL was amended to eliminate the 'severe or pervasive' standard for such claims.").  "Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's [race]."  N.Y. Exec. Law § 296(1)(h).

The NYSHRL itself does not define the term "harassment," and cases interpreting harassment prior to the 2019 amendments are tainted by the now rejected "severe and pervasive" standard.  See, e.g., Lenart v. Coach Inc., 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) ("To prevail on a hostile work environment claim under . . . the NYSHRL, a plaintiff must show that his or her 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'").

Some cases interpreting harassment following the 2019 amendments suggest that a plaintiff need only plead the same standard of a NYCHRL hostile work environment claim, which, as discussed below, does not recognize a difference between hostile work environment and discrimination.  See, e.g., McSweeney, 776 F. Supp. 3d at 262; Moore v. Hadestown Broadway Ltd. Liab. Co., 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024); Samuels v. City of New York, No. 22-cv-1904, 2023 WL 5717892, at *9 (S.D.N.Y. Sept. 5, 2023).  "The case law, however, has not definitively resolved whether the effect of the 2019 amendment is to make the

20

NYSHRL's standard *identical* to that of the NYCHRL – or merely closer to it." <u>Singh v. Meetup LLC</u>, 750 F. Supp. 3d 250, 259 (S.D.N.Y. 2024) (quoting <u>Yost v. Everyrealm, Inc.</u>, 657 F. Supp. 3d 563, 578 (S.D.N.Y. 2023)), <u>reconsideration denied</u>, No. 23-cv-9502, 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024).

The plain meaning of the word "harassment" suggests plaintiff must allege *persistent* behavior that is unpleasant and hostile. [5]  <u>See, e.g.</u>, <u>Samuels</u>, 2023 WL 5717892, at *10 (finding that the defendants' repeated physical assaults and aggressive comments created a hostile work environment under the new standard).

Assuming then, that plaintiff must allege persistent discrimination to state a claim for hostile work environment under the NYSHRL, plaintiff has met that burden.  Plaintiff has alleged that Diorio cut plaintiff's overtime pay without similarly cutting the pay of his two white coworkers.  Diorio suspended plaintiff at least twice for arriving late to work – behavior for which the two white coworkers were not admonished.  Moreover, Diorio wrote up plaintiff for failing to buff floors that looked identical to floors buffed by the coworkers, who were not similarly punished.

As mentioned above, § 296(1) of the NYSHRL does not hold the DOE vicariously liable for the actions of Diorio.  <u>See</u> <u>Totem Taxi, Inc. v. New York State Hum. Rts. Appeal Bd.</u>, 65 N.Y.2d 300, 305, 491 N.Y.S.2d 293, 295 (1985).  Accordingly, the Court sustains plaintiff's NYSHRL hostile work environment claim against Diorio and dismisses the claim against the DOE.

---

[5] Merriam-Webster defines "harass" as "to annoy persistently," or "to create an unpleasant or hostile situation for especially by uninvited and unwelcome verbal or physical conduct." <u>Harass</u>, Merriam-Webster, https://www.merriam-webster.com/dictionary/harass (last visited March 3, 2026).  Similarly, Oxford English Dictionary defines "harass" as "[t]o subject (a person or group) to unwarranted (and now esp. unlawful) speech or behavio[r] causing annoyance, alarm, distress, or intimidation, usually persistently over a period of time; to persecute," or "to annoy, pester." <u>Harass</u>, Oxford English Dictionary, https://doi.org/10.1093/OED/5028428762 (last visited March 3, 2026).

### 2.    NYCHRL

Plaintiff brings NYCHRL and NYSHRL hostile work environment claims against all defendants.  "Under the NYCHRL, . . . unlike under Title VII . . . there is no distinction between a claim premised on the creation of a hostile work environment (a species of harassment claim) and one premised on unlawful discrimination: the former is subsumed into the latter, and a plaintiff need only prove that 'she has been treated less well than other employees because of a protected trait.'"  Rothbein v. City of New York, No. 18-cv-5106, 2019 WL 977878, at *9 n.12 (S.D.N.Y. Feb. 28, 2019) (quoting Johnson v. Strive E. Harlem Emp't Grp., 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014)); McSweeney v. Cohen, 776 F. Supp. 3d 200, 262 (S.D.N.Y. 2025). Accordingly, the Court treats plaintiff's NYCHRL hostile work environment claim as a NYCHRL claim for discrimination, and as explained above, sustains the claim against all defendants.

### C.    FMLA Retaliation

Plaintiff brings FMLA retaliation claims against all defendants. [6]  "The FMLA provides generally that a covered employer is required to grant an eligible employee up to a total of 12 weeks['] leave" for, *inter alia*, a "serious health condition that makes the employee unable to perform [his job]."  De Figueroa v. New York, 403 F. Supp. 3d 133, 153 (E.D.N.Y. 2019) (quoting Coutard v. Mun. Credit Union, 848 F.3d 102, 108 (2d Cir. 2017); 29 U.S.C. § 2612(a)(1)(D)).  An employee who exercises this right, who is then "subjected to some adverse employment action by the employer," can bring a claim for retaliation under § 2615(a)(1) of the FMLA.  Woods v. START Treatment & Recovery Centers, Inc., 864 F.3d 158, 166-167 (2d Cir. 2017).

---

[6] Plaintiff also brings §§ 1981, 1983 retaliation claims against defendants.  Defendants do not argue for their dismissal, however, and those claims survive the motion to dismiss.

22

"An individual may be held liable under the FMLA only if she is an 'employer,' which includes 'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" Ziccarelli v. NYU Hosps. Ctr., 247 F. Supp. 3d 438, 446 (S.D.N.Y. 2017) (quoting 29 U.S.C. § 2611(4)(A)(ii)(I)).  As discussed above, Diorio acted in his official capacity as plaintiff's supervisor.  Therefore, the DOE and Diorio may all be held liable under the FMLA as employers.

Similar to a claim for discrimination, a plaintiff can (but need not) plead the same four factors of a prima facie case to state a claim for FMLA retaliation.  See De Figueroa, 403 F. Supp. 3d at 156 (explaining that a plaintiff can establish a prima facie case by showing that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent); Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 469 (S.D.N.Y. 2011) (explaining that a plaintiff need not establish a prima facie case to survive a motion to dismiss).

Under these factors, defendants do not dispute that plaintiff exercised rights protected under the FMLA and that he was qualified for his position, so the only questions are whether plaintiff suffered an adverse employment action and if so, whether it occurred under circumstances giving rise to an inference of retaliatory intent.

"Adverse employment actions are actions that 'could well have dissuaded a reasonable employee in [the plaintiff's] position from complaining of unlawful discrimination[.]" Milien v. N.Y.C. Dep't of Educ., No. 20-cv-480, 2023 WL 6050119, at *19 (E.D.N.Y. Sep. 15, 2023) (quoting Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 44 (2d Cir. 2019)).  Plaintiff suffered an adverse employment action because Diorio took away his overtime benefits and

23

thereby reduced his pay.  See Smith, 769 F. Supp. 2d at 470-71 (explaining that a "demotion evidenced by a decrease in wage or salary" or a "reduction in pay" constitutes an adverse employment action).

A "very close" temporal proximity between FMLA leave and the adverse employment action is sufficient to establish a causal inference of retaliation.  See Donnelly, 691 F.3d at 152. Plaintiff alleges that "once" he returned from medical leave, Diorio cut his overtime pay. Although plaintiff doesn't provide the exact date that this occurred, taking all reasonable inferences in plaintiff's favor, plaintiff's use of the word "once," suggests that it occurred "at the moment when," or "as soon as" he returned from medical leave.[7]  Because plaintiff has pleaded a close temporal proximity between his FMLA leave and when Diorio cut his overtime pay, the Court sustains plaintiff's FMLA retaliation claim against all defendants.

### CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration is denied.  The Court dismisses plaintiff's Title VII discrimination claim against Diorio; plaintiff's NYSHRL discrimination claim against the DOE; and plaintiff's NYSHRL hostile work environment claim against the DOE.  All other claims survive the motion to dismiss.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       April 17, 2026

---

[7] See Once, Merriam-Webster, https://www.merriam-webster.com/dictionary/once (last visited Feb. 27, 2026); Once, Oxford English Dictionary, https://doi.org/10.1093/OED/9302400615 (last visited Feb. 27, 2026).

24